IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: 4714 Morann Avenue,     :
Houtzdale, Clearfield County,     :
Pennsylvania     :     No. 909 C.D. 2022
    :     Argued: May 8, 2023
Appeal of: Commonwealth of     :
Pennsylvania     :


BEFORE:    HONORABLE ANNE E. COVEY Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT          FILED: September 13, 2023


The Commonwealth of Pennsylvania appeals an order of the Court of Common Pleas of Clearfield County (trial court) that denied its petition for civil forfeiture of a house that is located at 4714 Morann Avenue in Houtzdale, Pennsylvania, and owned by Pamela Gavlak (Gavlak). The trial court found that Gavlak, who pled guilty to three drug-related offenses, did not know that her adult children were making drug sales from the house or consent to this activity. It found that the sentence imposed on Gavlak for her drug offenses also demonstrated a low degree of culpability. Based on these findings, the trial court concluded that the Commonwealth's requested forfeiture of Gavlak's home would impose an excessive penalty in violation of the Eighth Amendment to the United States Constitution.[1] On appeal, the Commonwealth argues that the trial court erred, asserting that Gavlak's guilty plea established that she had consented to the illegal use of her home. Discerning no merit to this argument, we affirm the trial court's order.

---

[1] U.S. CONST. amend. VIII. It states, in pertinent part, as follows: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." *Id.*

## Background

The Commonwealth based its forfeiture claim upon a drug-trafficking scheme in Clearfield County. According to the Commonwealth, Gavlak's son-in-law, Todd Anderson, made periodic purchases of cocaine in Beaver Falls to repackage and sell for profit in Clearfield County. Trial Court PA. R.A.P. 1925(a) Op. at 1. Between July 2016 and March 2017, the Commonwealth's confidential informants made a total of 11 controlled buys[2] of cocaine from Todd Anderson, Catherine Anderson, Gavlak's daughter, and Robert Gavlak, Gavlak's son. Of these 11 controlled buys, 5 occurred at Gavlak's house; 2 occurred at a property owned by Todd Anderson; and the remainder occurred elsewhere. None of the 11 controlled buys involved Gavlak.

A list of the five controlled buys at Gavlak's house follows. On July 20, 2016, the controlled buy involved a $200 purchase of two grams of cocaine from Todd Anderson. On December 21, 2016, the controlled buy involved a purchase of a $300 8-ball of cocaine from Robert Gavlak. On January 27, 2017, the controlled

---

[2] At the forfeiture hearing, the Commonwealth provided no explanation or definition of these "controlled buys." Case law provides as follows:

> In a controlled buy, police send an undercover officer or informant to purchase a controlled substance from a suspect. The controlled buy employs a standard procedure: Police search the informant to insure he has no drugs before meeting the suspect; give the informant marked bills; and send him to meet the suspect at a spot where police have set up their surveillance.

*Commonwealth v. 1997 Chevrolet and Contents Seized from James Young*, 106 A.3d 836, 841 (Pa. Cmwlth. 2014) (*1997 Chevrolet I*). The observed sale is followed by a search of the informant to verify that the "small item" observed to change hands was a controlled substance. *Id*. at 842.

Here, the Commonwealth provided no testimony that its controlled buys followed this standard procedure or why its proffered hearsay testimony on the controlled buys should be credited. Such evidence is necessary to establish the probative value of a "controlled buy." In *1997 Chevrolet I*, 106 A.3d at 841-44, for example, the Philadelphia Police Department provided the direct testimony of police officers involved in the controlled buys, who testified about each controlled buy in meticulous detail.

2

buy involved a $300 purchase of 3.5 grams of cocaine from Catherine Anderson. On February 3, 2017, the controlled buy involved another $300 purchase of 3.5 grams of cocaine from Catherine Anderson. On March 20, 2017, the controlled buy involved a $300 purchase of 3.5 grams of cocaine from Todd Anderson. Forfeiture Petition, ¶7(c)-(g); Reproduced Record at 15a (R.R. __). The five sales totaled $1,400.

On March 21, 2017, agents from the Pennsylvania Attorney General's Office (Attorney General's Office) executed a search warrant at Gavlak's house. The agents seized $1,769 in cash; a bank check in the amount of $1,000; approximately 28 grams of cocaine; a notebook that listed drug sales; and 1,000 miniature Ziploc bags. The agents arrested Todd and Catherine Anderson and Robert Gavlak. Gavlak was neither present during the search nor arrested.

Thereafter, Gavlak was interviewed by agents of the Attorney General's Office on two occasions. Forfeiture Petition, ¶7(u); R.R. 19a-20a. On March 27, 2017, she told the agents that she overheard a visitor to the house, Leroy Bryant, talking on his cell phone about a storage unit rented by Todd Anderson. Specifically, she heard Bryant say he was looking for the keys to the unit so that he could remove certain items, which Gavlak believed to be either cocaine or cash. At her interview on April 6, 2017, Gavlak stated that she was aware her son and daughter had substance abuse issues, explaining that she and her late husband had previously sent them to rehabilitation for treatment. Gavlak stated she had gone to Beaver Falls with Todd Anderson, but the trips were for their work as disc jockeys at various locations and occasions.[3]

---

[3] Gavlak's *pro se* answer stated that those "occasions" included receptions for a graduation, wedding, birthday, and a memorial. *See* Original Record, Item 17, Answer to Petition for Forfeiture and Condemnation (Answer), at 3, ¶7(s).

On August 17, 2017, Gavlak was arrested and charged with seven criminal offenses. They included possession with intent to manufacture or deliver a controlled substance; conspiracy with intent to deliver; criminal use of a communication facility; corrupt organizations (two counts); dealing in proceeds of unlawful activity; and perjury. Police Criminal Complaint at 2-4; R.R. 191a-93a. On March 12, 2018, Gavlak entered a "Negotiated Plea Agreement and Guilty Plea Colloquy" with the District Attorney of Clearfield County to Count 1, "PWID"; Count 6, "CC/PWID"; and Count 7, "Crim. Use of C.F." Plea Agreement at 1; R.R. 211a.[4]

In regard to "PWID," Possession with Intent to Deliver, the police criminal complaint stated that

> beginning January 1, 2016 through March 31, 2016, then between April 1, 2016 through June 30, 2016, then between July 1, 2016 through September 30, 2016, then between October 1, 2016 through December 24, 2016 and finally between Jan. 1, 2017 through March 21, 2017, the Defendant did possess with the Intent to deliver Cocaine, a Schedule II Controlled Substance, while not being registered under this Act.

Police Criminal Complaint at 2; R.R. 191a. For the plea of "CC/PWID," Criminal Conspiracy/Possession with Intent to Deliver a Controlled Substance, the police criminal complaint stated that

> [b]etween Jan. 1, 2016, and March 21, 2017, the Defendant did conspire and agree with TODD ANDERSON, CATHERINE ANDERSON, ROBERT GAVLAK, LEROY BRYANT; and

---

[4] Gavlak's sentencing order described the guilty plea as follows:

> Possession with Intent to Deliver a Controlled Substance (cocaine, 50 to 100 grams), an ungraded Felony, Criminal Conspiracy/Possession with Intent to Deliver a Controlled Substance (cocaine, 50 to 100 grams), an ungraded Felony, and Criminal Use of a Communication Facility, a Felony of the Third Degree[.]

Sentence Order, 7/10/2018, at 1; R.R. 40a.

4

others that they or more than one of them would engage in conduct constituting the possession with the intent to deliver/delivery of Cocaine, a Schedule II Controlled Substance, and in pursuance of such conspiracy one or more overt acts were committed, all of which is/are violation(s) of Title 18; 903 (A)(1) and Title 35; 780-113(A)(30).

*Id.* Finally, for the plea of "Crim. Use of C.F.," Criminal Use of a Communication Facility, the police criminal complaint stated that, at various times after January 1, 2016, consistent with the time periods cited in the possession charge,

[t]he Defendant did use cellular telephones to facilitate the operation(s) of the Corrupt Organization(s), and in pursuance of such one or more overt acts were committed, all of which is/are [i]n violation(s) of Title 18; 7512(A).

*Id.*

On May 24, 2018, the Commonwealth filed the instant petition for civil forfeiture[5] of Gavlak's house for the stated reason that it had been used for the "storage and distribution of controlled substances in violation of [T]he Controlled Substance, Drug, Device and Cosmetic Act[.]"[6] Forfeiture Petition, ¶9; R.R. 25a. The petition alleged, *inter alia*, that the house "was purchased with proceeds derived from the selling of a controlled substance[.]" *Id*; R.R. 25a-26a. It further alleged that "based upon the numerous controlled buys, information from co-defendants, to include [] Gavlak's son, and based on [] Gavlak's own statements," Gavlak was aware that her house "was being used to facilitate a large-scale cocaine distribution network." *Id.*, ¶7(oo); R.R. 24a.

In Gavlak's *pro se* answer to the petition, she denied that she knew that illegal drugs were being sold from her house. Her answer stated that Gavlak was

_____

[5] The petition was filed pursuant to the act commonly known as the Forfeiture Act, 42 Pa. C.S. §§5801-5808.

[6] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§780-101–780-144.

5

aware of her children's drug addictions and allowed her children to move in with her in order to provide a safe environment for her children and grandchildren and "help fight these addictions." Original Record (O.R.), Item 17, Answer at 3, ¶7(t). Her answer specified that she and her late husband paid off the mortgage in 2010, long before her children moved in. After obtaining legal representation, Gavlak filed an amended answer with new matter that, *inter alia*, asserted three affirmative defenses: (1) the house was lawfully acquired; (2) she did not know of or consent to the drug activity in her home; and (3) forfeiture of her home would impose an unconstitutional excessive fine. O.R., Item 21, Amended Answer ¶¶17, 22, 26-30.

Both the Commonwealth and Gavlak filed motions for judgment on the pleadings. The trial court granted the Commonwealth's motion for the stated reasons that Gavlak's house had been an instrumentality of the drug crimes and its forfeiture was proportionate to her offense.

Gavlak appealed to the Pennsylvania Superior Court, which reversed. *Commonwealth v. All That Certain Lot or Parcel of Land Located at 4714 Morann Avenue, Houtzdale, Clearfield County*, 261 A.3d 554 (Pa. Super. 2021) (*All That Certain Lot*). The Superior Court held that the trial court had erred because the pleadings "do not provide a basis for a determination that no genuine issues of fact exist as to instrumentality, lack of consent, or excessiveness." *Id*. at 561. The Superior Court concluded that

> there is a factual dispute regarding Gavlak's culpability as the property owner. Specifically, although she pled guilty to drug offenses, Gavlak denied knowledge or involvement in the underlying drug operation *to the extent that it occurred in her home*.

*Id*. at 562 (emphasis in original). The Superior Court further explained that even where the property owner cannot satisfy a statutory defense to a forfeiture, the court

6

must still inquire into whether the forfeiture would effect an excessive fine. On this point, the Superior Court cited our Supreme Court, which has held as follows:

> *Constitutional protections are independent from statutory safeguards.* Indeed, the legislature's desire to protect an innocent property owner is not necessarily co-extensive with the constitution's protection against excessive sanctions. *As a constitutional matter, we find that assessing the gravity of the offense includes a determination of the degree of knowledge of a property owner.* Even a property owner, while not wholly without knowledge or granting consent, may lack full knowledge of criminal activity, or may bear only nominal or token blame for the illegal conduct serving as the foundation for the forfeiture.

*Commonwealth v. 1997 Chevrolet and Contents Seized from James Young*, 160 A.3d 153, 191 (Pa. 2017) (*1997 Chevrolet II*) (emphasis added). The Superior Court ordered the trial court to direct discovery by the parties and thereafter to conduct a trial.

Due to Gavlak's guilty plea, the Commonwealth filed a motion *in limine*, which the trial court granted, to preclude Gavlak from presenting evidence contesting the facts alleged in the forfeiture petition. Trial Court Order, 2/22/2022; R.R. 221a. Subsequently, the trial court issued a "corrective" order that allowed Gavlak to present evidence relevant to her knowledge of, and consent to, the unlawful use of her property. *See* Trial Court 1925(a) Op. at 3. In March of 2022, the trial court conducted a two-day, non-jury trial, at which both the Commonwealth and Gavlak presented evidence.

The Commonwealth offered the testimony of Jonathan Vesnesky, an agent with the Attorney General's Office, Bureau of Narcotics, who testified he has been involved in "hundreds" of drug investigations and arrests over the course of his 20 years with the Attorney General's Office. Notes of Testimony (N.T.), 3/2/2022, at 6-7; R.R. 69a-70a. Vesnesky testified about his investigation into the drug

7

operation in Clearfield County and participation in the search of Gavlak's house. He testified that the Fortieth Statewide Investigating Grand Jury heard testimony that "at times" cocaine was prepared for sale, by putting it into smaller bags, in the living room of Gavlak's house.[7] *Id*. at 12; R.R. 75a. In addition, the grand jury heard testimony that Gavlak was in the house "at times" when cocaine was present. *Id*. at 13; R.R. 76a. On cross-examination, Vesnesky acknowledged that the grand jury also heard testimony that Gavlak had confronted her daughter and son-in-law, and they denied "any drug dealing activity" at her house. N.T., 3/2/2022, at 22; R.R. 85a. Vesnesky also acknowledged that none of the controlled buys, at any location, involved Gavlak. *Id.* at 17; R.R. 80a. Further, the items recovered in the course of the search were not found in the common areas of the house or in Gavlak's bedroom. *Id.* at 20; R.R. 83a. When asked to identify a "particular" harm caused by the drug activity at the house, Vesnesky responded that "we have all seen the results of people [who] are addicted to drugs." *Id*. at 25; R.R. 88a. Vesnesky estimated that the cocaine uncovered in the March 2017 search of Gavlak's house had a value of $2,800. *Id.* at 28; R.R. 91a.

For her part, Gavlak testified that during the period of the investigation, she was employed as a nurse at the State Correctional Institution at Houtzdale. Her supervisor advised her that there were rumors her son, daughter, and son-in-law were selling drugs from her house. Gavlak promptly confronted all three about the rumor and "took their word that they weren't selling [drugs]" at her house. N.T., 3/28/2022, at 12; R.R. 121a. She testified that she was not often at the house because when she

---

[7] Gavlak did not object to Vesnesky's testimony about what other people stated before the grand jury and, as such, it constituted double hearsay. Notably, Vesnesky did not state whether he actually heard this testimony or simply read the transcript of the grand jury proceeding. Because the transcript of this testimony was not placed into the record, it cannot be determined, or assumed, that Vesnesky's summary of witness testimony was accurate.

8

was not working weekends at the prison, she was working as a disc jockey. She testified that she did not see anything going on at the house that would have substantiated the rumors of drug dealing. It also seemed unlikely because her children routinely asked her for money to buy "socks or underwear or shirts or pants or shoes" needed by her grandchildren. *Id*. at 13; R.R. 122a. She denied ever seeing either drug sales or packaging activities. *Id*. at 14; R.R. 123a. She further testified that she and her husband purchased the home from his family, and it had functioned as the family home. Proof of the 2010 mortgage satisfaction was entered into evidence. Gavlak Exhibit C; R.R. 261a.

As a result of her criminal conviction, Gavlak's license as a licensed practical nurse (LPN) has been revoked for five years. Gavlak testified that she did not know how much cocaine she pleaded guilty to possessing, explaining that she did what her "attorney told [her] to do." N.T., 3/28/2022, at 18; R.R. 127a. In response to whether she agreed that the house had been used repeatedly to prepare drugs for sale, she testified that she did not know "what was packaged in the house. I was not there." *Id*. at 24; R.R. 133a. Gavlak testified that her four grandchildren, aged seven and younger, lived at her house during the relevant time period, before the arrest of their parents.

Clinton Spencer, Gavlak's boyfriend, testified. He explained he has been dating Gavlak for a total of "six or seven years." N.T., 3/28/2022, at 27-28; R.R. 136a-37a. He testified to having been at the Gavlak's house "hundreds of times," but he never saw any activities consistent with drug dealing or noticed large amounts of cash "sitting around." *Id*. at 28-30; R.R. 137a-39a. He was with Gavlak when she confronted her children about their rumored drug activity. *Id.* at 31; R.R. 140a. "They . . . apparently lied through their teeth to her." N.T., 3/28/2022, at 34;

9

R.R. 143a. He testified that at the time, Gavlak was spending most of her time at his house because of her long workdays, sometimes 16 hours; the noise generated by 4 young children made it difficult for her to sleep at her house. Spencer stated that, at present, he "takes care of her" because she has been unable to find employment. *Id.* at 33; R.R. 142a. They "go back and forth" to take care of her house. *Id.*

With respect to the value of the property, the Commonwealth presented the appraisal of Jeffrey Luzier, a certified appraiser. His report of August 24, 2020, stated as follows:

> This report is based on my physical inspection of the site and improvements, and inspection and locational analysis of the neighborhood and area, and an economic analysis of the market for properties such as the subject. I have gathered information from public records, local real estate agents, MLS data, newspapers, the Internet and other information sources. I have developed the appraisal and prepared the report in accordance with the Uniform Standards of Professional Appraisal Practice .
> . . .
> My opinion of the market value for the subject property, as of 08/18/2020 is $50,000.

R.R. 151a. Luzier also noted that a number of repairs were needed, including a general yard cleanup; a driveway renovation; replacement of a shed window; filling-in the swimming pool; plumbing repairs; mold removal; and a cleanup of the house. His report estimated that these repairs would cost $25,000.

Gavlak presented the November 5, 2020, appraisal of John Curtain, also a certified appraiser. He visited the house and made a "physical assessment of the property"; inspected the neighborhood; and looked at comparable sales in the area. R.R. 222a-23a. Noting that the house was built in the early 1950s and had an in-ground swimming pool, which originally cost $40,000, Curtain concluded that

10

Gavlak's house had a fair market value of $105,000. R.R. 223a-24a. This appraisal value included the current condition of the house. R.R. 224a.

On this record, the trial court addressed the statutory and constitutional requirements for a civil forfeiture of property.

The trial court concluded that the Commonwealth met its statutory burden of proving that the house had been used to facilitate illegal drug sales, which rendered it forfeitable. It further held that because of Gavlak's conviction, the Commonwealth established "that the innocent owner defense is not applicable to Claimant." Trial Court Order, 7/27/2022, ¶3.[8] Accordingly, the trial court turned to the threshold constitutional requirement, *i.e.*, that the property to be forfeited must be the instrumentality of the offense. Noting that a property is considered an "instrumentality" if it was "significant to operation or success of the underlying offense," the trial court held that Gavlak's house met this test. Trial Court Op. at 4. It reasoned that "the drug enterprise likely would not have lasted as long as it did" but for the use of the property. *Id*. at 5.

The trial court then turned to the proportionality analysis used to determine whether the forfeiture would be excessive. It concluded that the forfeiture of Gavlak's family residence would be grossly disproportional to the gravity of her offense. It reasoned as follows:

---

[8] Gavlak did not cross-appeal paragraph 3 of the trial court's order on the statutory defense. Notwithstanding the sobriquet "innocent owner defense" to describe the defense, the Forfeiture Act does not state that the claimant must be free of a criminal conviction in order to qualify for this defense. In the Eighth Amendment analysis, the owner's conviction is irrelevant; the owner must have culpability for the property's use in the underlying offense. *See, e.g., Von Hofe v. United States*, 492 F.3d 175, 189 (2d Cir. 2007) (co-owner knew marijuana was being cultivated in the basement of her home and was convicted of possession of marijuana but because she did not know her husband was distributing the marijuana, the forfeiture of her half interest in the house was held to impose an excessive and unconstitutional fine).

11

> The underlying offense was a long-term drug trafficking operation, where Gavlak entered into a conspiracy with her children and son-in-law to sell large amounts of cocaine over a two-year period. The drug sales occurred on a daily basis, sometimes several times a day. Though controlled substance sales severely harm the community and cause an escalation of other crimes, such as theft, shop-lifting, assault, and death, there *was no actual or specific harm established for the offenses that Gavlak and her co-conspirators were convicted.*
>
> Gavlak herself faced the potential punishment of up to twenty-seven years of incarceration and a fine of $215,000. The sentence Gavlak received was a minimum term of twenty-two months to a maximum term of five years of incarceration *and total fine of $3.00.*

Trial Court 1925(a) Op. at 6 (emphasis added). The trial court reasoned that where the criminal penalty constitutes a fraction of what is authorized, "'a minimum level of culpability is inferred.'" *Id*. at 6-7 (quoting *All That Certain Lot*, 261 A.3d at 562 n.4). Further, "when Gavlak confronted her children, they denied that drugs were being sold from the house" and "she believed them." Trial Court 1925(a) Op. at 7-8. Critically, "[t]he Commonwealth did not present any conflicting testimony or evidence to show that Gavlak actually knew or negligently allowed drugs to be sold" from her house. *Id.* at 7.

The trial court concluded that although Gavlak "was convicted of being in a conspiracy" to distribute cocaine, "the conviction alone" did not establish that her home should be forfeited. *Id*. at 7-8. Simply, "there [was] no evidence to show that Gavlak actually knew or was reckless in allowing drugs to be sold from the house." *Id*. at 8. Gavlak's monetary fine of $3.00 also demonstrated minimal culpability for the scheme.

The trial court credited the Commonwealth's appraisal of Gavlak's house "because it took the damage and condition of the property into account when

12

determining [its] value."[9]  Trial Court 1925(a) Op. at 6.  Accordingly, the trial court found that "the fair market value of the property is $50,000."  *Id*.  This was the monetary value used to do the excessive fines analysis.

The trial court held that the forfeiture of Gavlak's house valued at $50,000 would impose an excessive fine in violation of the Eighth Amendment to the United States Constitution, given her low degree of culpability for the illegal use of her house.  U.S. CONST. amend. VIII.  The Commonwealth appealed.[10]

## Appeal

On appeal to this Court, the Commonwealth raises one issue:

> Whether the trial court erred because it was not an unconstitutional excessive fine to forfeit a parcel valued at $50,000, where the parcel is in need of significant repairs, the property claimant does not reside in the parcel, individuals sold cocaine for a significant duration from the parcel, the property claimant pleaded guilty to large scale cocaine trafficking, and the property claimant was aware of and consented to other individuals regularly selling cocaine at the parcel?

Commonwealth Brief at 3 ("Statement of the Question Involved").  Gavlak rejoins that the trial court correctly determined that a forfeiture of her house would result in an excessive and unconstitutional fine given her minimal culpability for, and lack of consent to, the unlawful use of her house.

## Analysis

We begin our analysis with a review of the law.

---

[9] The trial court did not credit Gavlak's appraiser, though he too considered the current condition of the property in his valuation of $105,000.  R.R. 222a-24a.

[10] In an appeal from the denial of a forfeiture petition, we review whether the trial court's findings of fact are supported by substantial evidence and whether the trial court committed an abuse of discretion or an error of law in its conclusions of law.  *Commonwealth v. All That Certain Lot or Parcel of Land Located at 2136 Clearview Avenue*, 841 A.2d 629, 631 (Pa. Cmwlth. 2004).

13

The statute known as the Forfeiture Act, 42 Pa. C.S. §§5801-5808, authorizes forfeiture of any property that has been used to facilitate a drug offense. Relative to real property, it states, in pertinent part, as follows:

**§ 5802. Controlled substances forfeiture.**

The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

\* \* \*

(6)(i)(C) *Real property used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act* other than a violation of section 13(a)(16) or (31) of The Controlled Substance, Drug, Device and Cosmetic Act, including structures or other improvements thereon, and including any right, title and interest in the whole or any lot or tract of land and any appurtenances or improvements, which is used or intended to be used in any manner or part to commit or to facilitate the commission of a violation of The Controlled Substance, Drug, Device and Cosmetic Act, and things growing on, affixed to and found in the land.

42 Pa. C.S. §5802(6)(i)(C) (emphasis added).

The Commonwealth has the initial burden of demonstrating that there is a sufficient or substantial nexus between the property and the prohibited activity. 42 Pa. C.S. §5805(j)(1) (stating that the "burden shall be on the Commonwealth to establish in the forfeiture petition that the property is subject to forfeiture"). It must make its case with clear and convincing evidence. 42 Pa. C.S. §5805(j)(3) (stating that "the burden shall be on the Commonwealth to prove by clear and convincing evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture"). If the claimant, or owner, of the property alleges that he did not know of or consent to the unlawful activity, "the burden shall be on the

14

Commonwealth to establish by clear and convincing evidence . . . that the person unlawfully used or possessed the property with the claimant's knowledge or consent". 42 Pa. C.S. §5805(j)(4)(ii). This provision, commonly known as the "innocent owner defense," protects "a property owner from the harsh result of forfeiture because of illegal drug use to which the owner did not consent." *1997 Chevrolet II*, 160 A.3d at 193.

"The government's power to subject a property to forfeiture is limited by the Excessive Fines Clause of the Eighth Amendment to the United States Constitution." *All That Certain Lot*, 261 A.3d at 560. Further, a "forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).

In *1997 Chevrolet II*, 160 A.3d 153, our Supreme Court established an analytical paradigm to guide the Court's analysis of whether the Eighth Amendment will prohibit a property's forfeiture. The inquiry has two parts: instrumentality and proportionality. The Supreme Court explained:

> [F]or purposes of an Excessive Fines Clause challenge to a civil in rem forfeiture, a court must first assess whether the property sought to be forfeited is an instrumentality of the underlying offense. *If the property is not found to be an instrumentality of the criminal conduct, the inquiry is dispositive and ends, and the forfeiture is unconstitutional.* If the property is an instrumentality, the inquiry continues to the proportionality prong and an assessment of whether the value of the property sought to be forfeited is grossly disproportional to the gravity of the underlying offense. *If it is grossly disproportional, the forfeiture is unconstitutional.*

*Id*. at 191 (emphasis added).

The Supreme Court also identified a series of factors to consider in an excessive fines challenge to a civil forfeiture. It stated as follows:

15

In making the *instrumentality determination*, a court should consider, *inter alia*:

(1) whether the property was uniquely important to the success of the illegal activity;

(2) whether the use of the property was deliberate and planned or was merely incidental and fortuitous to the illegal enterprise;

(3) whether the illegal use of the property was an isolated event or repeated;

(4) whether the purpose of acquiring, maintaining or using the property was to carry out the offense;

(5) whether the illegal use of the property was extensive spatially and/or temporally; and

(6) whether the property is divisible with respect to the subject of forfeiture, allowing forfeiture of only that discrete property which has a significant relationship to the underlying offense.

The factors, among others, to be considered in assessing the *value of the property* are:

(1) the fair market value of the property;

(2) the subjective value of the property taking into account *whether the property is a family residence or if the property is essential to the owner's livelihood*;

(3) the harm forfeiture would bring to the owner or innocent third parties; and

(4) whether the forfeiture would deprive the property owner of his or her livelihood.

The factors to be considered in gauging the *gravity of the offense* include:

(1) the nature of the underlying offense;

(2) the relation of the violation of the offense to any other illegal activity and whether the offender fit into the class of persons for whom the offense was designed should be considered;

(3) *the maximum authorized penalty as compared to the actual penalty imposed upon the criminal offender*;

16

(4) the regularity of the criminal conduct—whether the illegal acts were isolated or frequent, constituting a pattern of misbehavior;

(5) *the actual harm resulting from the crime charged, beyond a generalized harm to society*; and

(6) *the culpability of the property owner*.

*1997 Chevrolet II*, 160 A.3d at 191-92 (emphasis added).

With these legal principles in mind, we turn to the Commonwealth's appeal.

The Commonwealth contends that the trial court erred in its gravity of the offense analysis. It argues that Gavlak's culpability is clear: her guilty plea constituted a record-based admission "that she was aware of the cocaine trafficking that occurred at 4714 Morann Avenue[.]" Commonwealth Brief at 9. Further, the trial court did not give appropriate consideration to the maximum penalties that could have been imposed on Gavlak; the sentences imposed on her co-conspirators; or the record evidence of the harm caused by the underlying drug sales. Alternatively, the Commonwealth argues that the trial court did not properly weigh the factors set forth in *1997 Chevrolet II*, 160 A.3d at 191-92, most of which favored a conclusion that a forfeiture would be proportionate and not excessive.

I.

The trial court addressed the factors listed by the Supreme Court for gauging the gravity of the offense. The Commonwealth argues that the trial court's findings on the nature and regularity of the underlying criminal offense favored the Commonwealth. However, the trial court's findings on the maximum authorized penalty compared to the minimum sentence imposed; the actual harm; and the culpability of the owner did not favor the Commonwealth. The Commonwealth's assertion of error focuses on Gavlak's culpability.

17

Culpability considers whether the owner was negligent or reckless in allowing the illegal use of the property; whether the owner was directly involved in that illegal activity; and the extent of the owner's direct involvement. *1997 Chevrolet II*, 160 A.3d at 190-91. The trial court concluded that the Commonwealth presented "no evidence to show that Gavlak actually knew or was reckless in allowing drugs to be sold from the Morann House," let alone show that she directly participated. Trial Court 1925(a) Op. at 8. The Commonwealth contends that it did not need to present any such evidence at the forfeiture hearing because Gavlak's guilty plea was sufficient to prove that she knew and consented to the illegal use of her property.

Commonwealth Exhibit 3 consists of the negotiated plea agreement and guilty plea colloquy by which Gavlak pled guilty to "PWID" (Count 1), "CC/PWID" (Count 6), and "Crim. Use of C.F." (Count 7). R.R. 211a. Exhibit 3 also includes a written "Guilty Plea Colloquy." R.R. 213a-16a. Question 44 of the written Guilty Plea Colloquy asked Gavlak: "Do you agree that the facts set forth in the Criminal Complaint and Affidavit of Probable Cause filed against you are an accurate statement of your role in regard to the charges to which you are pleading guilty?" R.R. 215a. She circled "yes." *Id*. Commonwealth Exhibit 2 consists of the criminal complaint and probable cause affidavits of Vesnesky and agent Dolores Morgan. R.R. 195a-97a. Attached to the probable cause affidavit is Presentment No. 18 of the Fortieth Statewide Investigating Grand Jury. R.R. 199a-210a.

The Commonwealth argues that Exhibits 2 and 3 were all that it needed to demonstrate Gavlak knew of and consented to the illegal use of her house. We disagree.

18

To begin, the Pennsylvania Rules of Criminal Procedure require a guilty plea to be offered in open court and a colloquy conducted to ensure that the plea is voluntary and understood by the defendant. PA.R.CRIM.P. 590(A).[11] At a minimum, a plea colloquy should inquire into six areas: "1) the nature of the charges, 2) the factual basis of the plea, 3) the right to a jury trial, 4) the presumption of innocence, 5) the sentencing ranges, and 6) the plea court's power to deviate from any recommended sentence." *Commonwealth v. Reid*, 117 A.3d 777, 782 (Pa. Super. 2015) (quotations omitted). *See also* PA.R.CRIM.P. 590, Comment. "[A] written plea colloquy that is read, completed and signed by the defendant and made part of the record may serve as the defendant's plea colloquy when supplemented by an *oral, on-the-record examination*." *Reid*, 117 A.3d at 782-83 (emphasis added). Here, the record does not contain the oral examination of Gavlak at the time she entered her plea.

The written plea agreement and colloquy have limited evidentiary value beyond establishing that the defendant's plea is voluntary and the terms of the agreement. PA.R.CRIM.P. 590(A). In any case, Gavlak's written plea colloquy did not establish that she knew or consented to the illegal use of her house. The criminal

---

[11] It states, in part, as follows:

(A)  Generally

(1)  Pleas shall be taken in open court.

(2)  A defendant may plead not guilty, guilty, or, with the consent of the judge, nolo contendere. If the defendant refuses to plead, the judge shall enter a plea of not guilty on the defendant's behalf.

(3)  The judge may refuse to accept a plea of guilty or nolo contendere, and shall not accept it unless the judge determines after inquiry of the defendant that the plea is voluntarily and understandingly tendered. Such inquiry shall appear on the record.

PA.R.CRIM.P. 590(A).

complaint offers a spare and conclusory summary of the illegal conduct to which Gavlak pled guilty: time periods, the type of controlled substance, and the names of co-conspirators. The criminal complaint says nothing about the amount of controlled substances, the manner of possession, or the location of the criminal activity for which Gavlak was charged. Likewise, the probable cause affidavit is silent on the location of her alleged illegal drug activity. It references Presentment No. 18 in a general way as supporting the criminal complaint, but it does not specify particular parts of the presentment.

The grand jury presentment is hearsay and was not separately admitted into evidence, but only as an attachment to the probable cause affidavit. The probable cause affidavit stated, in pertinent part, as follows:

> Your Affiants have reviewed the evidence presented before the Fortieth Statewide Investigating Grand Jury and found it comports with the results of investigative efforts and findings by your Affiants and other Law Enforcement Officers, which was related to your Affiants as to the allegations contained in the attached criminal complaint.

> Additionally, the aforementioned Presentment number eighteen (18) was reviewed and approved by the Honorable Anthony A. Sardone, Supervising Judge for Norman A. Krumenacker, Supervising Judge of the Fortieth Statewide Investigating Jury, who by order dated 19th of July, 2017, directed that the appropriate criminal charges be initiated and prosecuted by the Office of the Attorney General of the Commonwealth of Pennsylvania in Clearfield County.

Commonwealth Exhibit 2, "Police Criminal Complaint and Affidavit of Probable Cause," at 1; R.R. 196a. Notably, Presentment No. 18, dated August 15, 2017, was sealed by order of the Supervising Judge, except where "directed or permitted" by order of the Supervising Judge. R.R. 198a. The Commonwealth did not establish

20

that the use of the presentment in a civil forfeiture hearing, as opposed to a criminal proceeding, was either directed or permitted by the Supervising Judge.

Even so, the presentment did not, in itself, demonstrate that Gavlak knew of or consented to the illegal drug activity at her house.[12] The presentment states that before the grand jury, on more than one occasion, Gavlak testified "that she knew nothing about any drugs in her house at 4714 Morann Avenue. She testified that she confronted Todd Anderson about rumors of his drug dealing from the house, but he denied it." R.R. 206a. The presentment reports that Gavlak's son, Robert, testified that she knew of his addiction and was "aware" of drug activity at her house but offered no specifics that might support this statement.[13] *Id.* Notably, Robert Gavlak also confirmed that Gavlak confronted Todd Anderson about selling drugs from the house. *Id.* The presentment reports that Robert's girlfriend stated that Gavlak was "present" in the house on an occasion when cocaine was prepared for distribution. *Id.* However, being "present" in the vicinity of an activity is not the same as "witnessing" this activity.

---

[12] The presentment sheds no light on Gavlak's drug offenses. According to the presentment, Todd Anderson, Catherine Anderson, and Robert Gavlak each testified to the grand jury about their cocaine dealing, their contacts, and their sales. They named each other as well as a variety of third parties as participants in the drug operation. However, they did not implicate Gavlak in any of this activity, at any location. R.R. 204a-07a.

[13] Robert Gavlak's actual words are unknown. He may have said "she had to be aware" or "I believe she knew," which is opinion, not fact. The presentment does not state the basis for Robert Gavlak's statement, which could have made a difference in the forfeiture hearing. Although given the opportunity to present witnesses to testify on rebuttal to Pamela Gavlak's testimony at the forfeiture hearing, the Commonwealth chose not to do so. N.T., 3/28/2022, at 38; R.R. 147a (scheduling a third hearing date for July 25, 2022, for rebuttal testimony to include testimony by videoconference from witnesses that may be in a state correctional institution).

Gavlak did not plead guilty to the presentment but to the charges in a police complaint, which say little that is factual.[14] Neither the criminal complaint nor the probable cause affidavit mention Gavlak's house. Even assuming the presentment was properly offered into evidence, it is not clear and convincing evidence of Gavlak's knowledge of what was happening at the house or consent to it. In short, Commonwealth Exhibits 2 and 3 did not establish that Gavlak knew of and consented to the drug packaging and sales that involved her house.

The Commonwealth emphasizes the facts in *1997 Chevrolet II*, 160 A.3d 153, which were, to be sure, quite different. There, the property owner, Elizabeth Young, owned a house and a 1997 Chevrolet minivan that were implicated in the marijuana sales of Young's grandson. He pled guilty to possession with intent to deliver marijuana and was sentenced to 11 to 23 months of house arrest; Young was not charged with a crime. The trial court ordered the forfeiture of Young's house and vehicle, and the Supreme Court reversed and remanded, setting forth the standards for an excessive fine analysis. Unlike Young, Gavlak was charged with a crime. However, the *1997 Chevrolet II* analysis does not require that the owner be innocent of any criminal charges. Rather, culpability relates to "the degree to which the property owner allowed the property to be employed in criminal activity – *i.e.*, his or her culpability – to be a factor concerning whether the forfeiture of the owner's property is grossly disproportional." *1997 Chevrolet II*, 160 A.3d at 190.

Although Gavlak pled guilty to drug offenses, the trial court credited Gavlak's testimony that "when [she] confronted her children, they denied that drugs were being sold from the house." Trial Court 1925(a) Op. at 7. Further, "[t]he

---

14    The Commonwealth's Forfeiture Petition erroneously states that the Fortieth Statewide Investigating Grand Jury "indicted" Gavlak. Forfeiture Petition, ¶¶7(gg)-(hh); R.R. 23a.

Commonwealth did not present any conflicting testimony or evidence to show that Gavlak actually knew or negligently allowed drugs to be sold out of the Morann House." *Id.* "Therefore, despite Gavlak's convictions, there is no evidence to show that Gavlak actually knew or was reckless in allowing drugs to be sold from the Morann House." *Id.* at 8. These findings are dispositive of Gavlak's culpability.

The Commonwealth also challenges the trial court's consideration of the penalty imposed on Gavlak. She received the minimum sentence of 22 months to 5 years of incarceration and a fine of $3.00, but the maximum sentence was 27 years and a fine of $215,000. The trial court found that Gavlak's actual sentence constituted a "fraction of the penalties authorized." Trial Court 1925(a) Op. at 6.

The Commonwealth argues the trial court erred. The Commonwealth emphasizes that Gavlak could have been fined criminally in an amount far in excess of the fair market value of her house, *i.e.*, $50,000. Further, the trial court did not consider the sentences of Todd Anderson, Catherine Anderson, and Robert Gavlak, who also pled guilty to possession with intent to deliver, conspiracy, and criminal use of a communication facility. Commonwealth Brief at 30. These sentences were not entered into the record and cannot be considered, even were they relevant.

By comparing the maximum penalty available to the actual penalty imposed upon Gavlak,[15] the trial court did exactly what is required in gauging the gravity of her offense. *1997 Chevrolet II*, 160 A.3d at 192 ("maximum authorized penalty as compared to the actual penalty"). This is also consistent with *Bajakajian*, 524 U.S. at 339-40 (holding that a forfeiture amount greater "by many orders of

_____

[15] In fact, Gavlak's Sentence Order made "the determination that the Defendant would be eligible for alternative minimum sentence/Recidivism Risk Reduction Incentive Program minimum. The Defendant's alternative minimum sentence is sixteen (16) months and fifteen (15) days." Sentence Order at 2; R.R. 218a. The Sentence Order also directed that the sentences on all three convictions be served concurrently.

23

magnitude" than the amount of the criminal fine imposed on Mr. Bajakajian by the sentencing court "would be grossly disproportionate to the gravity of his offense"). *See also State of Utah v. Real Property at 633 East 640 North, Orem, Utah*, 994 P.2d 1254, 1259 (Utah 2000) (holding that "trial court placed too much reliance on the maximum penalties in its analysis of proportionality instead of focusing on the actual fines and penalties imposed.") We discern no error in the trial court's understanding and application of this factor.

On the harm factor, the trial court explained that while the illegal sales of controlled substances "harm the community," the Commonwealth did not establish an "actual or specific harm" caused by the conviction of Gavlak and her co-conspirators. Trial Court 1925(a) Op. at 6. Indeed, "generic consideration of harm" is "largely unhelpful" to the proportionality analysis. *1997 Chevrolet II*, 160 A.3d at 190. The Commonwealth rejoins that the record contains evidence of specific and actual harm, *i.e.*, the loss of Gavlak's nursing license and the risk to children in the home. We reject this argument.

First, the loss of Gavlak's professional license cannot be the type of "harm" to be considered in gauging the gravity of the offense. By that circular logic, any punishment of a criminal drug offense is "harm" that will justify an *in rem* civil forfeiture of the offender's property. The Commonwealth alternatively explains that society has lost Gavlak's services as a nurse. However, this is the kind of "generalized harm to society" that does not suffice. *1997 Chevrolet II*, 160 A.3d at 192.

Second, the harm to Gavlak's grandchildren was not developed at the forfeiture hearing by Vesnesky. He acknowledged that one child was present in the house during the search but did not know how many children lived at the house. The

record contains no evidence as to what the children saw or experienced in the house. The Commonwealth's argument that the children were harmed requires conjecture, which is not evidence.

We reject the Commonwealth's challenge to the trial court's gravity of the offense analysis. The trial court exercised its discretion as required by *1997 Chevrolet II*, 160 A.3d 153, carefully following each step in that process and giving consideration to the relevant factors.

II.

The Commonwealth complains, alternatively, that the trial court did not "provide any discussion" of how it weighed the factors used in its excessive fines analysis, which requires at least a remand. Commonwealth Brief at 41. Notably, it was Gavlak's burden to show that a forfeiture would be grossly disproportionate. The Commonwealth argues that it "won" on most factors: value of property; instrumentality; and several gravity of the offense factors. That it lost on three factors, the Commonwealth argues, should not outweigh those seven factors on which it "won." Commonwealth Brief at 26.

The Commonwealth first argues that it "won" on all four of the value of the property factors. The trial court found that the house "is Gavlak's family residence that was passed to her from her husband, and it is where her children and grandchildren lived prior to her arrest." Trial Court 1925(a) Op. at 6. On the other hand, the trial court found that she does not presently reside there and its "forfeiture would not deprive her of her livelihood." *Id*. The trial court accepted the Commonwealth's objective valuation of $50,000. However, the trial court's findings on the subjective value of Gavlak's home were mixed. As our Supreme Court has explained, "both an objective pecuniary and subjective non-pecuniary

25

valuation of the property is necessary." *1997 Chevrolet II*, 160 A.3d at 188. In short, the trial court did not clearly hold in favor of the Commonwealth at least on the subjective value of the house.

It is true that the trial court found that Gavlak's house was the instrumentality. However, this is a threshold inquiry and is not part of the proportionality analysis.

More to the point, we reject the Commonwealth's proposition that the proportionality analysis consists of a scorecard, where the outcome is determined by the number of checkmarks thereon. A precise or mathematical explanation of the weight to assign each proportionality factor is neither required nor expected. Indeed, the *1997 Chevrolet II* test is a flexible one that ensures that trial courts have the discretion needed to reach the appropriate conclusion. As the Supreme Court has explained, "these factors are not meant to be exhaustive, and [] additional factors, when relevant, may be considered by a court, depending upon the particular circumstances at issue." *1997 Chevrolet II*, 160 A.3d at 191.

The trial court examined the particular circumstances of this case. It found that upon learning of rumors that drug dealing was occurring in her home, Gavlak immediately confronted her children, who denied the accusation. Critical was the *degree* of Gavlak's knowledge and consent to the illicit activities at the house. "Even a property owner, while not wholly without knowledge or granting consent, may lack full knowledge of criminal activity, or may bear only *nominal or token blame* for the illegal conduct serving as the foundation for the forfeiture." *1997 Chevrolet II*, 160 A.3d at 191 (emphasis added). Here, "Gavlak denied knowledge or involvement in the underlying drug operation *to the extent that it occurred in her home*." *All That Certain Lot*, 261 A.3d at 562 (emphasis in original).

26

The trial court determined that Gavlak's culpability for the criminal use of the house was "nominal" or "token" based on her credible testimony at the forfeiture hearing and her minimum sentence for her role in the underlying drug operation.

At issue here is a citizen's residence. As our Supreme Court has explained:

> [A] property owner's *residence* may be the subject of the civil forfeiture. In Pennsylvania, as elsewhere, the home is an especially significant type of property. The loss of one's home, regardless of its monetary value, not only impacts the owner, but may impact other family members, and one's livelihood. Indeed, the home is where one expects the greatest freedom from governmental intrusion; it not only occupies a special place in our law, but the most exacting process is demanded before the government may seize it.

*1997 Chevrolet II*, 160 A.3d at 197 (emphasis in original). Under this "exacting process," the "trial court must faithfully identify the circumstances that make it reasonable to infer that the property owner had actual knowledge of the illegal use of the property or consented to the underlying criminal activity." *Id*. at 198. Simply, the Commonwealth presented no evidence to allow the trial court to make a reasonable inference of Gavlak's actual knowledge of the illegal use of her house or consent to the underlying criminal activity.

The trial court employed the "exacting process" that "is demanded before the government may seize" a residence. *1997 Chevrolet II*, 160 A.3d at 197. The trial court was not also required to "score" each factor and assign it a weight as part of this exacting process.

**Conclusion**

The trial court's factual findings are based on substantial evidence, and they relate to the inquiry required by the remand order: the innocent owner and the

27

Eighth Amendment defense. The Commonwealth disagrees with the outcome of the exacting process followed by the trial court, but that does not constitute error. Essentially, the Commonwealth asks this Court to substitute its judgment for that of the trial court, which is beyond appellate review. *See Vernon Township Volunteer Fire Department, Inc. v. Connor*, 855 A.2d 873, 879 (Pa. 2004) (appellate court "may not substitute its judgment for that of the trial court if the determination of the trial court is supported by competent evidence").

We discern no error in the trial court's conclusion that the forfeiture of Gavlak's home would impose an excessive and unconstitutional fine, given Gavlak's lack of knowledge that drugs were being sold from her home and her minimal culpability for the drug trafficking conspiracy. Thus, we affirm the order of the trial court.

_____

MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: 4714 Morann Avenue,     :
Houtzdale, Clearfield County,   :
Pennsylvania                    :     No. 909 C.D. 2022
                               :
Appeal of:  Commonwealth of  :
Pennsylvania                    :

# **O R D E R**

AND NOW, this 13th day of September, 2023, the July 28, 2022, order of the Court of Common Pleas of Clearfield County, in the above-captioned matter, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita